## THE STATE *v.* SWAILS.

If to the intent to commit a felony the present ability to commit it be not joined, the offense is not complete.

Where *A.* fired a gun at *B.* at the distance of forty feet, with intent to murder him,—*A.* believing that the gun was loaded with powder and ball, though in fact it was loaded with powder and a light cotton wad,—*held*, that there was no assault with intent to commit murder.

APPEAL from the *Decatur* Circuit Court.

*Per Curiam.*—Indictment for shooting at one *Lee* with intent to commit murder. Trial by jury, and verdict of acquittal.

The only question raised is upon an instruction given to the jury. The instruction is in these words:

"If you believe, from the evidence, that at the time the defendant fired the gun at said *Lee*, it was not charged with any thing but powder and a light cotton wad,—*Swails* being at the distance of forty feet from *Lee* at the time,—and that at that distance the life of *Lee* was not at all endangered or put in jeopardy by the act of *Swails* in discharging the gun at him, in consequence of the manner in which it was loaded; the de-

fendant cannot be convicted, although he may have thought that the gun was properly loaded with powder and ball, and although he may have intended to murder *Lee*."

The State excepted; and under our peculiar statute allowing her to except and appeal, not for the purpose of affecting the particular case, but as a guide to the lower courts in future, she brings the case to this Court. 2 R. S. p. 377, s. 119.

The instruction given was substantially correct. It is true that the law aims to punish the intent. That *Swails*, in this case had a felonious intent, cannot be doubted. But he lacked the ability and the means to carry the intent into execution. To constitute an assault, the intent and the present ability to execute, must be conjoined. Thus, in this case, there was the intent, but not the power. Had the gun been loaded with ball or any other destructive missile, the offense charged would have been complete. Such shooting with a gun properly loaded, would be one or another grade of crime, according to the result. To shoot at and miss *Lee* would have been an assault with intent to murder. To shoot and wound, an assault and battery with the like intent. To shoot and kill would have been murder. But to shoot at the distance of forty feet, with an ordinary charge of powder and wad, no matter under what supposition or with      t intent, was not either of these grades of crime          present ability to accomplish the felonious purpose          anting (1).

The appeal is dismissed.

*J. S. Scobey* and *W. Cumback*, for the State.

*J. Gavin* and *J. R. Coverdill*, for the appellee.

(1) *Henry et al* v. *The State*, 18 Ohio R. 32, is a case very similar to this. It is there decided that discharging a gun loaded with powder and wadding only, at a person so far distant that no injury would probably result from the act, is not a violation of the 24th section of the act of that State providing for the punishment of crimes. SPALDING, J. "When the General Assembly saw fit to make imprisonment in the penitentiary the penalty for maliciously shooting at a person with intent to kill or wound, no 'children's play' was contemplated as demanding so great

Nov. Term,
1856.
THE STATE
v.
SWAILS.

severity of punishment. True, the offense may be found complete, and the culprit receive the whole penalty of the law, without the infliction of the least injury upon the object of his malice. But then, if the intended victim shall have escaped harm, he must have been in peril of 'life, limb, or body,' else the punishment is altogether disproportioned to the offense.

"In the King's Bench of *England*, the following ruling was held correct. Where an indictment alleged that the defendant shot at the prosecutrix with a pistol loaded with gunpowder and other destructive materials, and it appeared that the pistol contained no ball or shot, but gunpowder and wadding only, the judge told the jury, that whether the pistol was loaded with gunpowder and ball or other destructive materials, or with gunpowder and paper only, if the prisoner fired it so near the person of the prosecutrix, and in such a direction as that it would probably kill her, or do her some grievous bodily harm, the case was within the statute. *Rex* v. *Kitchen*, R. and R. 95.

"We recognize this as law, and we hold the converse of the proposition to be true, that when the defendant shot at the prosecutrix with a pistol loaded with gunpowder and wadding only, and the prisoner fired it at so great a distance from the person of the prosecutrix that it could not probably do her the least bodily harm, the case was not within the statute.

"In the case under consideration, the gun contained a slight charge of powder, with wadding of tow. It was discharged by one woman at the person of another, with a distance of fifty feet intervening, and no probable injury could result from the act. In our opinion the case is not within the statute." The Court were unanimous. See 2 Archb. Cr. Pl. 272, notes.

When an indictment charges a shooting with felonious intent, it must be proved that the gun was so loaded as to be capable of doing the mischief alleged to be intended. *Vaughan* v. *The State*, 3 Sm. and Marsh. 553. In this case a dispute had existed between the defendant below and his neighbors touching the right of the latter to use part of his land as a highway. [illegible] day laid in the indictment certain schoolboys undertook to pass [illegible] road, with the design, as they confessed, to annoy the defendant [illegible] were pursued by the defendant, who, at a distance of sixty yards from one of the boys, who was in the act of getting over a fence, discharged his gun. The boy alleged to have been shot at was uninjured; and no marks of shot could be discovered in the immediate neighborhood of where he was at the time. Subsequently, marks of shot were found in some bushes and traced to a sapling in a somewhat different direction from that which the boy had occupied, and the shot were discovered to be small bird-shot. Other testimony went to prove that the bird-shot were probably the contents discharged from the gun. The Court, by THATCHER, J., say: "It has been held in cases decided under statutes similar to our own, that it must appear that the fire-arms were loaded so as to be capable of doing the mischief intended. If loaded with powder and wadding only, but if fired so near an indi-

vidual, and in such a direction, that it would probably kill him, it would come within the statute. But it would be absurd to say that the discharging a gun, even loaded with ball, at so great a distance as could not possibly effect injury to the person against whom it was directed, evinced an intention to kill; and the same may be said of any thing else wherewith the gun may be loaded. There was evidence before the jury, of experiments having been made with the gun used by the defendant, that went to show that at the same distance at which he stood from the boy when the gun was discharged, and with a charge of the same kind of bird-shot, the gun was incapable of taking life. Now, as a man's motives and intentions are to be inferred from the means which he uses and the acts which he does, we are inclined to the belief that no serious damage was intended by the defendant, but that his object was rather to alarm than injure." See Archb. Cr. Pl. 270, 271, notes.

Kitchen's case, cited above, was decided under Ld. Ellenborough's act, substantially the same as 9 Geo. 4, c. 31, and the recent statute. Upon an indictment under the same statute for priming -and leveling a blunderbuss, loaded with gunpowder and leaden shot, and attempting, by drawing the trigger, to discharge the same with intent to murder, the jury found that the blunderbuss was not primed when the prisoner drew the trigger, but found the prisoner guilty. On a case reserved, a majority of the judges considered the verdict of the jury as equivalent to a finding by them that the blunderbuss was not so loaded as to be capable of doing mischief by having the trigger drawn; and if such were the case, they were of opinion, in point of law, that it was not loaded within the meaning of the statute. Carr's case, Russ. and Ry. 377. So under the statute of 9 Geo. 4, c. 31, to an indictment for attempting to discharge a loaded pistol by drawing the trigger, with intent to murder, the defense was that the touch-hole was plugged. PATTESON, J., said to the jury—"If you think that the pistol had its touch-hole plugged so that it could not, by possibility, do mischief, the prisoner ought to be acquitted; because I do not think that a pistol so circumstanced ought to be considered as loaded arms within the meaning of the act." Harris's case, 5 C. & P. 159. A rifle which is loaded, but which for want of priming, will not go off, is not a loaded arm within the third section; and the pointing a rifle, thus circumstanced, at a person, and pulling the trigger of it, whereby the cock and hammer were thrown and the pan opened, will not warrant a conviction either of felony under the third, or of assault under the eleventh section. R. v. James, 1 C. and K. 530. See Archb. Cr. Pl. 272, note.

An indictment under 9 Geo. 4. c. 31, s. 11, for shooting at a man with intent to murder him, in different counts alleged a gun to have been loaded with shot and various destructive materials. It appeared that a watcher of game, being out at night, saw the prisoner crouching under a wall, and said he knew him, when the prisoner instantly leveled a gun at him. He stooped to avoid it, and the gun went off, the charge, whatever it was, striking a hairy cap he had on his head, and singeing the

Nov. Term, 1856.

THE MADISON AND INDIANAPOLIS RAILROAD CO.
v.
THE TRUSTEES OF, &c.

hair. There was evidence of previous ill will; and the prisoner, after his arrest, acknowledged that he shot. A bag of shot was found in his pocket. It was objected that there was no evidence to show that the gun was loaded with shot, or any of the destructive materials charged in the indictment, and PATTESON, J., was strongly of opinion that the objection ought to prevail; and after consulting ALDERSON, B., he directed an acquittal. *Whitley's* case, 1 Lew. 123.—Russ. on Crimes, 724. In *Blake* v. *Bernard*, 9 C. and P. 626, where a count in trespass for an assault, stated that the defendant presented a pistol "loaded with gunpowder, ball, and shot" at the plaintiff, and there was no evidence that the pistol was loaded; Ld. ABINGER, C. B. said, "It is stated in the complaint that the pistol was loaded with gunpowder, ball, and shot, and it is for the plaintiff to make that out." See Russ. on Crimes, 725, 726, 727. It was said that upon an indictment on the 9 Geo. 1 c. 22, it was necessary to show that the instrument was loaded with gunpowder and a bullet, slug, or other deadly substance; but that it was sufficient if such facts appeared from the general circumstances of the case. Russ. on Crimes, 722.

But in *Caldwell* v. *The State*, 5 Texas R. 18, the Court charged the jury that if the defendant presented his gun at the prosecutor within shooting distance, the presumption of law was that the gun was loaded; and if it was not, it devolved on the accused to prove it; and that he knew it was not loaded when he presented it. The charge was held to be correct by the Supreme Court. See, also, *The State* v. *Cherry*, 11 Ired. 465; *The State* v. *Smith*, 2 Humph. 457.