## ALLEN *vs.* THE STATE OF GEORGIA.

1. The case of a witness introduced to impeach another witness, forms no exception to the general rule against the asking of leading questions.
2. A request by defendant to charge that he was justified in shooting after prosecutor had attempted to shoot him, is objectionable, because it *assumes* the fact that prosecutor had attempted to shoot him ; and also because that fact *alone*, without its appearing 'for instance whether or not the prosecutor was continuing the combat, does not constitute a justification.
3. Under an indictment for shooting at another, it is a very material matter whether or not the gun is loaded, and how loaded.

Indictment for assault with intent to murder, and for shooting at another.   In Burke Superior Court.   Tried before Judge HOLT, at May Term, 1858.

Jesse J. Allen was indicted for an assault with intent to murder one Elijah A. Gordon.   There was also a count "for shooting at another," contrary to the statute in such cases made and provided.   The case was tried before Judge Holt, at May Term, 1858, and the Jury returned a verdict of guilty, under the second count.   The defendant moved for a new trial on eight grounds, three only of which were relied upon and insisted on before the Superior Court, viz :

1st. That the Court erred in permitting the Attorney General, after asking William Anderson, a witness for

defendant, whether or not he had made certain statements, relative to the case, to Ephraim Ponder, at two several places and times designated, to introduce said Ponder as a witness to impeach Anderson, and to read to Ponder, from a paper held in his hands, the statements denied by Anderson, and to ask him, Ponder, whether or not Anderson had, at the times and places named, made such statements to witness—counsel for defendant objecting to this mode of interrogation, as leading and illegal, and insisted that the Attorney General should ask the witness whether or not Anderson, at the times and places designated, had made any and what statements to him relative to the case, or to the like effect.

2d. That the Court erred in refusing to charge the Jury, when requested by defendant's counsel in writing, "that if the constable was acting *de facto* or *de jure*, the defendant was justified in shooting, after the attempt of that constable to discharge a rifle at defendant, by snapping it three or four times before resistance by defendant."

3. That the Court erred in charging the Jury, that under the second count in the indictment, (viz: for shooting at prosecutor,) it was perfectly immaterial, regarding defendant's guilt, whether the pistol discharged by him was loaded with ball or shot, or not.

The Court refused the motion for a new trial, to which decision counsel for defendant excepted, and assigns the same as error.

JENKINS, represented by JNO. K. JACKSON and A. H. H. DAWSON, for plaintiff in error.

Attorney General McLAWS, *contra.*

*By the Court.*—STEPHENS, J., delivering the opinion.

1. The questions put to the impeaching witness in this case were excessively leading, and we think, for that rea-

Allen vs. The State.

son, were irregular and improper. There can be no good reason for relaxing in favor of an impeaching witness the general rule against the asking of leading questions. This is a case where it devolves upon the Jury to *weigh* testimony in a peculiar sense, and it is, therefore, important that the witness should first be left to exhaust his memory on the subject, without the aid of leading, in order that the Jury may see how far he speaks from his own memory, and how far from suggestion. This is an important test in *weighing* the value of testimony.

2. The charge requested by defendant, that he was justified in shooting at the prosecutor after the prosecutor had attempted to shoot him, is wrong in two respects. It *assumes* that the prosecutor had attempted to shoot him, a fact which was contested in the case, and should have been submitted to the Jury. But it also states the law erroneously. It does not follow that the defendant was justified merely because he shot *after* the prosecutor had attempted to shoot him. The prosecutor might have *abandoned* the combat, and then the defendant clearly would not have been justified in shooting. To constitute a *justification*, something more must appear than the single fact that the defendant did not shoot until an attempt had been first made to shoot him.

3. We think it is a most material matter whether the gun is loaded or not, and how loaded, under an indictment for shooting at another, contrary to the act of 1856. To shoot *at* implies an *aim*, and intent to *hit*, and therefore the nature of the load is important in judging of this intent. If the character of the load at a distance, as, for instance, a mere powder gun at twenty yards distance, renders it impossible that the load could take effect, a reasonable man could not be presumed to *intend* that consequence. So the nature of the load is an important matter in enabling the Jury to judge whether the defendant merely shoots or shoots *at*—whether he has or has not an

intent to hit. This we are satisfied is the sound construction of this act. And for myself, I do not hesitate to say that the act is one which ought to be most strictly construed against the prosecution, and most liberally in favor of the accused. So far from its being a salutary law, as pronounced by the Court below, I regard it as a very hard law, and as involving absurd consequences. The only justification it allows is *self defence*, which properly cannot include more than defence of life and person. Now, there are many cases under our law where a man may *kill* another not in self-defence, as in defence of habitation, and in some cases in defence of property. In these cases he *kills* and is *justified*, but if he shoots and *misses*, he incurs the penalty of this act, according to its strict terms. The penalty falls not on him who shoots and kills, but on him who shoots and misses. Its penalty, therefore, seems to be leveled at *bad shooting*, and yet no such thing can be presumed to have entered into the intention of the Legislature. This is enough to show that the act is one which calls loudly for the enforcement of that rule which in penal laws construes strictly against the prosecution, and liberally in favor of the accused.

Judgment reversed.