THE PEOPLE OF THE STATE OF NEW YORK, RESPONDENT, *v.* THOMAS MORAN, APPELLANT.

*Grand larceny in the second degree — it must be shown that there was property in the pocket attempted to be picked.*

Under an indictment charging the crime of grand larceny in the second degree, the evidence adduced on behalf of the prosecution upon the trial showed that the accused attempted to pick the pocket of a lady in the city of New York, but there was no evidence whatever from which it could be inferred that the lady in question had any property in her pocket.

*Held*, that it was essential to a conviction that the prosecution should prove that there was property in the pocket in question. (DANIELS, J., dissenting.)

That the provisions of sections 33 and 34 of chapter 508 of the Laws of 1860 are still in force, as they constitute sections 1446 and 1447 of chapter 410 of the Laws of 1882.

Effect, upon the construction to be given to a general statute, of the existence of a local statute creating an offense which might be covered by the language of the general act, considered.

APPEAL by the defendant from a judgment entered, January 30, 1889, in the Court of General Sessions, held in and for the city and county of New York, convicting the defendant of the crime of attempting to commit the crime of grand larceny in the second degree.

*Abram Suydam*, for the appellant.

*W. Travers Jerome*, for the respondent.

VAN BRUNT, P. J.:

The evidence in this case showed that the defendant attempted to pick the pocket of a lady in the city of New York. There was no evidence whatever from which it could be inferred that the lady in question had any property in her pocket; and the appellant contends that it was necessary to prove that there was property in the pocket in question in order to warrant a conviction on this indictment, and this is the question brought up by this appeal.

In the consideration of this question it may be proper to refer to the history of the law in reference to crimes such as it is claimed the defendant committed.

By the Revised Statutes (pt. 4, chap. 1, tit. 7, § 3), it is provided that "every person who shall attempt to commit an offense prohibited by law and in such attempt shall do any act towards the commission of such offense, but shall fail in the perpetration thereof, or shall be prevented or intercepted in executing the same * * * shall * * * be punished," etc.

It has been held in the State of Massachusetts, under a similar statute, that although it did not appear that there was any property to be stolen, yet, as the attempt to steal constituted the crime, and that as an attempt is simply to make an effort to effect some object, to make a trial or experiment, therefore, the prisoner, by thrusting his hand into a pocket makes an attempt to pick a pocket, although he does not succeed, because there happens to be nothing in the pocket.

It, however, appears, from the legislation in this State, that such was not deemed to be the rule by our legislature, because by chapter 508 of the Laws of 1860, after having provided, by section 33, that picking pockets in the city and county of New York should be punished as grand larceny, although the value of the property taken should be less than twenty-five dollars, and that attempts under similar circumstances should be punished as for attempts to commit grand larceny, it provided, by section 34, that " every person who shall lay hand upon the person of another, or upon the clothing upon the person of another, * * * with intent to steal as a pick-pocket, under such circumstances as shall not amount to an attempt to rob or an attempt to commit larceny, shall be deemed guilty of an assault with intent to steal, and shall be punished as is now provided by law for the punishment of misdemeanors. It shall not be necessary to allege or prove, in any prosecution for an offense under this section, any article intended to be stolen, or the value thereof, or the name of the person so assaulted."

This legislation clearly shows that it was the opinion of the legislature that an attempt to pick a pocket that had nothing in it was not a crime which might be punished as an attempt to commit grand larceny, because, by the provisions of the previous section, an attempt to pick a pocket in the city of New York might be punished as for an attempt to commit grand larceny. Now, if it had not been supposed that unless there was some proof of property no crime would be made out, what could have been the possible reason for the adoption of section 34, particularly in view of the last clause which provides that for the establishment of the offense mentioned in that section it shall not be necessary for the prosecution to allege or prove any article intended to be stolen, or the value thereof, or the name of the person so assaulted? If an attempt was intended to be construed to mean simply the making of an effort to steal as a pick-pocket there could have been no possible necessity for providing for the crime mentioned in section 34, because the legislation of the previous section would then have covered the whole ground embraced within the provisions of said section 34. It seems to us, therefore, that the only interpretation that can be placed upon these sections is that unless the exist-

ence of property was proven no conviction of an attempt to commit the crime mentioned in section 33 could be maintained. This legislation contained in sections 34 and 33 was attacked upon the ground that it was unconstitutional in that the law was a local one and did not comply with the requirements of the Constitution; but it was maintained finally by the Court of Appeals, and it would appear that because of this attack the legislature passed, in 1862, chapter 374, in which it incorporated this same legislation making it embrace the whole State. . This was the condition of the law at the time of the adoption of the Penal Code. The codifiers, in the spirit of improvement which seems to have guided them in the codification of the law, entirely changed the language of the definition which had long prevailed under the Revised Statutes as to what should be deemed an attempt to commit a crime, and it cannot be said that they have added anything in lucidity, although perhaps their definition is more brief. Section 34 of the Penal Code provides that "an act done with intent to commit a crime, and tending but failing to effect its commission, is. an attempt to commit that crime."

We do not see that the section in question is any broader than the statute, nor have we any reason to believe that the legislature intended that it should have any greater scope. We have been unable to find, however, any provision in the Penal Code which embraces section 34 of chapter 508 of the Laws of 1860, or section 3 of chapter 374 of the Laws of 1862. And under section 725, notwithstanding the adoption of the Penal Code, those acts necessarily remained in existence, as such section provides that all acts defining and providing for the punishment of offenses and not defined and made punishable by the Code should not be affected by the provisions in the Code, but were to be recognized as continuing in force notwithstanding the provision of the Code.

The next legislation affecting this subject is to be found in chapter 410 of the Laws of 1882, where, by sections 1446 and 1447, sections 33 and 34 of chapter 508 of the Laws of 1860 were re-enacted and made part and parcel of the act of 1882; another legislative interpretation of the previous enactments that it was still the opinion of the legislature that a person could not be convicted of an attempt to commit grand larceny by proof of an attempt to pick a pocket without proof of property. Therefore, as the law

stood after the adoption of the consolidation act above mentioned, the proof in the case at bar was sufficient to convict the offender of the offense defined in section 34 of chapter 508 of the Laws of 1860, but was not sufficient to convict the offender of an attempt to commit grand larceny under section 33 of the Laws of 1860.

In its definitions of larceny the Code has embraced the picking of pockets, making, however, the offense greater where it is committed in the night-time than where it is committed in the day, but both being felonies. Therefore, under the interpretation which must necessarily follow the legislative interpretation of its previous acts upon this subject, and the interpretation given to those acts, even after the adoption of the Penal Code, we think it must be held that the evidence in this case did not authorize the conviction of the defendant of the crime of attempting to commit the crime of grand larceny in the second degree. But we are told by the learned counsel for the people that, if this construction is sound, a known thief may pass around in a crowd in full view of a detective officer, and place his hand in the pockets of different people manifestly with the intention of picking pockets, because, by chapter 593 of the Laws of 1886, chapter 508 of the Laws of 1860, and chapter 374 of the Laws of 1862, have been repealed. The statement as to the repeal seems to be correct ; and if we had to depend upon the laws of 1860 and 1862 for the punishment of this offense, it certainly would be impossible to do so because of the repeal of those statutes. But the provisions of sections 33, 34 of chapter 508 of the Laws of 1860 are still part of the law, because they are part of chapter 410 of the Laws of 1882, and they have not been repealed, and they apply to the city and county of New York in which this crime was committed, and in which county the punishment there fixed may be inflicted. So far as this county is concerned, therefore, no such dire results will arise as is claimed on the part of the learned district attorney, although the application of the law to the other parts of the State seems to have been repealed by the wholesale repealing act above mentioned. This result, however, cannot affect the conclusion to which we must come; and if other legislation is necessary in order to place the criminal law in the position it was before the attempted codification, that is a question for the legislature to consider in the future. We are of the opinion, there-

fore, that the defendant was wrongfully convicted in the case at bar, and that the only conviction which the evidence justified was for the crime specified in section 1447 of chapter 410 of the Laws of 1882. And as the indictment is entirely defective upon this question, it would seem that the judgment must be reversed and the prisoner discharged.

BARRETT, J.:

The question here is an interesting one. The logic of it is, in my judgment, with the view taken by the presiding justice. Independent of the statutes which he has considered, I find myself unable to resist the reasoning of the English judges in *Regina* v. *Mc Pherson* (Dears. & Bell C. C., 197) and *Regina* v. *Collins* (Leigh & C., 471). There are two cases in this country in conflict with these English decisions, namely, *Commonwealth* v. *McDonald* (5 Cush., 365) and *The People* v. *Jones* (46 Mich., 441). All the other cases cited by Mr. Jerome in his admirable brief (*Rogers* v. *Commonwealth*, 5 S. & R. 462; *Josslyn* v. *Commonwealth*, 6 Metc., 236; *State* v. *Wilson*, 30 Conn., 500; *Kunkle* v. *State*, 32 Ind., 220; *Hamilton* v. *State*, 36 Ind., 280; *State* v. *Beal*, 37 Ohio St., 108) referred to acts done with a particular intent, *e. g.*, assault with *intent* to steal, breaking and entering with *intent* to steal, assault with *intent* to kill, assault with *intent* to rob, and so on.

The Massachusetts and Michigan cases fail to distinguish between an act done with a particular intent and an attempt to commit a specific offense. In each case the *corpus delicti* differs. The placing of one's hand in another's pocket with intent to steal is one thing, the attempt to commit larceny in the second degree is quite another thing. The criminal intent is but one element in an attempt. There must also be an act tending to effect the commission of the defined crime. If the act merely tends to show guilty purpose, but does not tend to effect the commission of the particular crime, there is no attempt, in a legal sense. We must not go astray by following dictionary definitions of the word attempt, rather than legal. Larceny consists of the felonious taking *of specific property*. An attempt, therefore, to commit larceny necessarily contemplates an act tending to effect the felonious *taking of specific property*. There can be no such act without the subject.

If that is wanting, the act can show nothing more than guilty purpose.

The Massachusetts case rests upon the popular meaning of the word " attempt," and holds that a man attempts to commit a legally defined crime when he thinks he can, and acts upon the thought, though, in fact, no such legally defined crime as he contemplates is possible. The Michigan case proceeds upon a view of what the law should be, rather than what it is. This is the language of the court: " We fully concur in the views expressed by the Massachusetts court in *Commonwealth* v. *McDonald* (5 Cush., 365). We think this is not only the better, but the only rule of law that could be adopted or recognized with safety to the rights of the public or individuals."

The logic of Chief Justice Cockburn, in the two English cases, seems to me to be quite unanswerable. In *Regina* v. *McPherson*, he says : " The word ' attempt' clearly conveys with it the idea that if the attempt had succeeded *the offense charged would have been committed* * * * but *attempting* to commit a felony is clearly distinguishable from *intending* to commit it. An attempt must be to do that which, if successful, would amount to the felony charged." And in *Regina* v. *Collins* (10 Law Times [N. S.], 582), he says : " But, assuming that there was nothing in the pocket of the woman, the charge of attempting to commit larceny cannot be sustained. This case, we think, is governed by that of *Regina* v. *McPherson*, and that an attempt to commit a felony can only be made out when if no interruption had taken place, the attempt could have been carried out successfully, and the felony completed, of the attempt to commit which the party is charged. In this case, if there was nothing in the pocket of the prosecutrix, in our opinion the attempt to commit larceny cannot be established."

Nor is there any real conflict between these two cases and the earlier case of *Regina* v. *Goodall* (2 Cox's C. C., 41.) There was no question in the latter case of an attempt. The conviction was for the offense of using an instrument upon a woman with intent to procure a miscarriage. The statutory crime consisted imply of the act done with the guilty intent. The prisoner there could not have been properly convicted of an attempt to commit a criminal abortion, for the reason that the subject of abortion was not present.

The distinction seems clear, and I am surprised at Mr. Bishop's difficulty in reconciling the cases. (1 Crim. Law [7th ed.], § 741.) Mr. Jerome's illustrations are apt and plausible, but hardly convincing. I agree that if we throw a stone at a piece of plate glass and fail to break it because the glass is too strong, there is an attempt to break plate glass. The act tended to break it and failed. If, however, the stone were thrown at what appeared to be plate glass, but was not, the wrong-doer might be guilty of throwing with intent to break plate glass, but, no matter what was in his mind, he could not be guilty of an attempt to break anything save the shining object which he mistook for glass. So, as to the scare-crow illustration, a man does not, in a legal sense, attempt to commit murder when, passing through a field in the dusk, he shoots at a dummy believing it to be his enemy. He shoots with intent to kill his enemy, but that is not the crime of an attempt to commit murder. The statutes considered by the presiding justice plainly recognize this as the legislative view of attempts, and the act making the laying on of hands, with intent to steal, an assault and a misdemeanor must have been intended as a provision for conduct which otherwise would not be punishable at all, either as an assault or as an attempt to commit larceny.

If the Massachusetts and Michigan view of attempts should prevail, I fail to see how any case can ever be brought within this "assault with intent to steal" act. For if that act is only applicable "under such circumstances as shall not amount to an attempt to commit larceny," and if every laying of hands upon the person or clothing with the ungratified expectation of finding and taking property *is* larceny, then, how can there ever be an assault with intent to steal? I think the presiding justice's view of these statutes is in harmony with their purpose and intent, and that the acts themselves flow from the legislative construction of what, in law, constitutes an attempt to commit a defined crime. I, therefore, concur in the reversal.

DANIELS, J. (dissenting) :

The indictment charged the defendant with attempting to commit the crime of grand larceny in the second degree. It was alleged that he attempted to steal the property of a woman, whose name

was to the grand jury unknown, from her person, and to prove the offense charged in the indictment a police officer testified that at the Washington market he saw the defendant and two other persons; that he had seen them before and followed them, and saw that the defendant went up against a lady and shoved his hand in her side pocket. He watched to see if he got anything, but he did not, and after that the arrest was made. Upon this evidence, which was not changed by the cross-examination, the defendant's counsel requested the court to direct the jury to acquit him on the ground that the facts proved did not support the charge in the indictment. That was denied and the defendant's counsel excepted, as he also did to the portion of the charge in which the jury were left at liberty to find, from the evidence, the facts alleged in the indictment, so far as they were important to make out this offense. By subdivision 2 of section 531 of the Penal Code, it has been made grand larceny in the second degree, to steal any property of another of any value, by taking the same from the person. And by section 34 of the same Code it has been further declared that "an act done with intent to commit a crime, and tending but failing to effect its commission, is an attempt to commit that crime." And by the next succeeding section it has been provided that the accused may be convicted of an attempt to commit the crime where he has been charged in the indictment with the commission of the crime itself. It has not been rendered necessary by the section defining the offense of an attempt to commit a crime, that it shall be made to appear that the person making the attempt had the ability to consummate the offense itself. Neither was it by the preceding law. (3 R. S. [6th ed.], 988, § 3). That made it an offense for any person in the attempt to commit an offense, to do any act towards its commission, where he failed in the perpetration thereof, or was prevented or intercepted in executing the attempt. While the language of the preceding statute has been changed and very much abridged, the section of the Penal Code relating to the same subject has not materially changed its effect. It is still an offense for the accused to appear to have done any act with intent to commit a crime and tending to have that effect. And the failure of the act to result in the commission of the crime is not allowed to exonerate the person from liability to punishment. The enactment has not been qualified

by the failure depending upon any contingency whatever. If the accused appears to have performed an act tending to commit a crime, with the intent to commit it, the offense is made out under this section of the Code. In this instance the defendant intended, as the jury was at liberty to find from what the officer stated he had done, to steal the property of the person referred to in the indictment, by taking the same from her person, and he attempted to accomplish that object by putting his hand in her pocket. That was an act tending to commit the crime, and it evinced the existence of the intention on his part mentioned in the statute, and his failure to succeed by reason of the fact that the woman may have had nothing in her pocket, did not relieve him from this criminal liability. The law has not made the offense dependent upon the fact that the person whose pocket may in that manner have been searched, had or had not property or any valuable thing in it, but it has made the offense to consist wholly upon the fact that the accused has done some act having a tendency to commit the crime, when that act has been prompted with the intention that it should be committed.

The legislation in this State, providing for increasing the punishment for the crime of larceny from the person, seems to have originated in chapter 508 of the Laws of 1860. This act related to the city of New York, and by section 33 it contained the substantial features of the present legislation defining the crime, and the attempt to commit it, of larceny from the person, for it made it the crime of grand larceny for the defendant to steal from the person of another, although the value of the property should be less than twenty-five dollars, and then it generally declared that attempts, so to steal, might be punished as for attempts to commit grand larceny. It was further provided by the next section of the act that every person who should lay his hand upon the person of another, or upon the clothing upon that person, in the city or county of New York, with intent to steal as a pickpocket, under such circumstances as should not amount to an attempt to rob, or an attempt to commit larceny, should be deemed guilty of an assault with intent to steal, and punished as provided by law for the punishment of misdemeanors, and in that class of cases it should not be necessary to allege or prove any article

intended to be stolen, or the value thereof, or the name of the person so assaulted. These sections were re-enacted and made generally applicable to the State at large by chapter 374 of the Laws of 1862, and the provisions of the section last referred to remained in force until that, as well as the preceding act, were repealed by sections 35 and 37 of chapter 593 of the Laws of 1886. But, prior to this repeal, the same sections had been made a part of chapter 410 of the Laws of 1882. This chapter was enacted for the consolidation of the laws relating to the city of New York, and section 1447 is the same as section 34 of chapter 508 of the Laws of 1860, and section 3 of chapter 374 of the Laws of 1862, and this enactment, contained in the act of 1882, has not been affected by the repealing act of 1886, but it still continues in force, applicable only, however, to offenses within its provisions committed in the city of New York.

But this section is not entitled to any effect in the way of limiting or abridging the language employed in framing section 34 of the Penal Code. That section is applicable to the State at large, including offenses within its description committed in the city of New York as well as elsewhere. It is to be construed according to the reasonable and fair effect of its language, and that construction must be the same in all portions of the State. It cannot be allowed and could not have been intended to have a broader or more enlarged significance in one part of the State than in another; and whatever facts would constitute a crime in other portions of the State under this section will be equally potent in that respect in the city of New York. It is a law of general application to be construed and applied in all localities to which it is applicable with the same force and effect. Section 1447 of chapter 410 of the Laws of 1882 is entitled to no effect whatever in the way of restricting the application of this section of the Penal Code, for it appears by its terms that it was not intended to include the case of an attempt to commit this crime. It is, as it was in the acts of 1860 and 1862, declaratory of the facts constituting a still different, though inferior, offense from that of an attempt to commit the crime, and what it has done is to make the act a misdemeanor to lay a hand upon another person, or upon the clothing of another person, with the intent to steal as a pick-

pocket, under such circumstances as will not amount to an attempt to rob or to commit larceny. This section contains no language preventing the full and appropriate effect to be given to that contained in section 34 of the Penal Code. It is a distinct and independent provision not designed to qualify the offense of an attempt to steal from the person, but leaving the act relied upon as an attempt to be determined by the language of the section and the construction which manifestly should be placed upon it. And while this section of the consolidation act has declared that it shall not be necessary to allege or prove any article intended to be stolen or the value thereof, it has nowhere, by language or implication, provided that it shall be necessary to allege or prove either of those facts to make out the offense of an attempt to commit the crime of larceny from the person, but it leaves the language otherwise employed in the law to be construed by itself, and to be carried into effect according to the import it shall appear entitled to have ; and that, by no construction, has required it to be alleged or proved that the act of the defendant, in attempting to pick the pocket of another, has not failed of its success by reason of the fact that the pocket contained no article of value which could be taken from it.

In *People* v. *Bernardo* (1 N. Y. Crim. R., 245) it was held by the learned recorder of the city that the act of attempting to pick a pocket containing nothing which could be stolen was within this section of the Laws of 1862. But the decision in that case has given a more extended effect to the section of the act under which it was decided than was warranted by its language, for, as already observed, it did not include an attempt to commit the crime, but all that this section has included is the specific act of laying a hand upon the person or clothing of another with intent to steal. That was not the act alleged to be criminal either in that or the present case. What the defendant has been convicted of is not placing his hand upon the person or clothing of the individual mentioned in the indictment, but of the act of inserting his hand in her pocket with the intent to steal, which is an entirely different act from that made a misdemeanor by this section of the act of 1862, and the section still in force in the act of 1882.

In the case of *Regina* v. *Collins* (10 Law Times [N. S.], 581), also, it was held that inserting the hand into the pocket of another

which contained nothing capable of being stolen was not an attempt to commit the crime of larceny from the person; and a similar view prevailed in *Regina* v. *McPherson* (26 Law Jour. [N. S.] M. C. 134). But these decisions appear to be in marked conflict with the principles applied for the determination of the case of *Regina* v. *Goodall* (2 Cox's C. C., 40), and they have been subjected to the same criticism in 1 Bishop's Criminal Law (7th. ed.), 741. Beyond that the rule upon which they proceeded has not been considered sound or one which should be followed by the courts in this country.

In *People* v. *Bush* (4 Hill, 133) the conviction of the defendant was sustained under an indictment charging him with an attempt to commit the crime, when it was shown that he had solicited another to perform the criminal act, and notwithstanding the fact that this other person never intended to commit the crime. The failure there was as significant as that which followed in this case from the absence from the pocket of money or property which could be stolen by the defendant; and this was followed in *Rogers* v. *Commonwealth* (5 Serg. & R.., 463). It was there said, in the course of the opinion, that "the intention of the person was to pick the pocket of Earle of whatever he found in it, and although there might be nothing in the pocket the intention to steal is the same." In *Josslyn* v. *Commonwealth* (6 Metc., 236), under provisions similar to those contained in the Revised Statutes in this State, it was held that a general intent to steal would complete the offense, and that the rule would be the same if there were no goods in the building broken and entered with that intent. A still more direct application of the law is contained in *Commonwealth* v. *McDonald* (5 Cush., 365), where it was held by the court that an attempt feloniously to steal from the person of another was not dependent, for the completion of the crime, upon evidence that the person assailed had property at the time in his pocket. And this construction of the law has also been followed in *State* v. *Wilson* (30 Conn., 500); *Kunkle* v. *State* (32 Ind., 220); *Hamilton* v. *State* (36 Id., 280); *People* v. *Jones* (46 Mich., 441); *State* v. *Beal* (37 Ohio, 108). And so it was also in *Commonwealth* v. *Jacobs* (9 Allen, 274). What was there said by the court in making the decision is especially applicable to this case, and that is that "whenever the law makes one step toward the accomplishment of an unlawful object, with the intent or pur-

pose of accomplishing it, criminal, a person taking that step with that intent or purpose, and himself capable of doing every act on his part to accomplish that object, cannot protect himself from responsibility by showing that, by reason of some fact unknown to him at the time of his criminal attempt, it could not be fully carried into effect in the particular instance."

In this state of the law with the evidence, which was produced before the jury, they were authorized to reach the conclusion declared by their verdict, and the judgment from which the appeal has been taken should be affirmed.

Judgment reversed and prisoner discharged.