**John Jack GARGAN, Appellant,**

v.

**STATE of Alaska, Appellee.**

No. 773.

Supreme Court of Alaska.

Feb. 2, 1968.

---

James A. Alfieri, Seattle, Wash., William J. Bailey, Anchorage, for appellant.

Edmond W. Burke, Asst. Dist. Atty., and Robert N. Opland, Dist. Atty., Anchorage, for appellee.

Before NESBETT, C. J., and DIMOND and RABINOWITZ, JJ.

## OPINION

RABINOWITZ, Justice.

After trial by jury appellant was found guilty of the crime of attempted larceny in a building and sentenced to three-years imprisonment.[1] We have concluded that the judgment and commitment entered by the superior court should be affirmed.

Appellant's initial contention is that the trial court erred in not granting his motion for judgment of acquittal. As part of this specification of error, appellant appears to contend that there was insufficient evidence as to the requisite element of intent to steal. We disagree.

When presented with a specification of error of this nature, this court will consider "only those facts in the record most favorable to the state and such reasonable inferences as the jury may have drawn from them * * *."[2] The record is reviewed in this light in order to ascertain whether "fair minded men in the exercise of reasonable judgment could have differed on the question of whether [appellant's intent to steal] had been established beyond a resonable doubt."[3] Under the foregoing test, we hold that there was sufficient evidence produced pertaining to the issue of intent to warrant affirmance of the trial court's denial of appellant's motion for judgment of acquittal. A brief

---

1. AS 11.20.150 defines the crime of larceny in a building as follows:

   A person who commits the crime of larceny in a dwelling house, banking house, office, store, shop, or warehouse, or in a ship, steamboat, or other vessel, or who breaks and enters in the night or daytime a church, courthouse, meeting house, town house, college, academy, or other building erected or used for public uses, and commits the crime of larceny in it, is punishable by imprisonment in the penitentiary for not less than one nor more than seven years.

   As to punishment for attempt, AS 11.05.020 provides:

   A person who attempts to commit a crime, and in the attempt does any act toward the commission of the crime, but fails, or is prevented or intercepted in the perpetration of the crime, when no other provision is made by law for the punishment of the attempt, upon conviction, is punishable as follows.

   (1) If the crime attempted is punishable by imprisonment in the peni-

   tentiary or state jail, the punishment for the attempt is by the same imprisonment, as the case may be, for a term not more than half the longest period prescribed as a punishment for the crime. If the period prescribed as a punishment for the crime is an indeterminate or life term, the punishment for the attempt shall be fixed by the court at a term not more than 10 years.

   (2) If the crime attempted is punishable by a fine, the punishment for the attempt shall be by a fine of not more than half the amount of the largest fine prescribed as a punishment for the crime.

2. Maze v. State, 425 P.2d 235, 239 (Alaska 1967).

3. Battese v. State, 425 P.2d 606, 610 (Alaska 1967), which in turn cited Bush v. State, 397 P.2d 616, 618 (Alaska 1964).

recapitulation of the relevant portions· of the record is pertinent here.

In regard to the crime of attempted larceny in a building, the indictment charged that appellant perpetrated the crime on February 17, 1966, in the laundry room of Building 35 of the Hollywood Vista Apartments in Anchorage.[4] The gist of the offense was that appellant had attempted to steal United States coins from· a coin-operated washing machine which was owned by Imperial Vending Company, Inc.

As part of the state's case John Ball, a· major stockholder in Imperial Vending Company, gave the following testimony: For several months prior to February 17, 1966, the corporation (which had coin-operated machines placed at numerous locations throughout the Anchorage area) had experienced pilferage of the contents of its ,washing machines' coin boxes. Early in the evening of February 17, 1966, the witness Ball secreted himself in a closet directly across the hall from the laundry room door in Building 35 of the Hollywood Vista Apartments. He stationed himself on a four-foot step ladder which enabled him to gain an unobstructed view of the laundry room from over the top of the closet's eight-foot wall. According to Ball, for the first few hours of his watch, the laundry room was occupied by familiies washing and drying clothes.[5] Business then subsided until just before 10 p. m. when the witness heard two men coming down the hallway. Ball then testified that:

> When they came to the laundry room, the younger [of the two] * * * stopped in the laundry room door * * and faced in the laundry room. Mr.· Gargan went in and knelt at the first machine on the right and started screw-. ing the lock out.[6]

While appellant was so engaged, Ball observed that the younger man was standing "in the laundry room door glancing up and down the hall [in] * * * either direction." Ball then shouted to the two men to lie down on the floor of the laundry room. Appellant then stood up and started running toward the laundry room door at which point Ball shouted, "Stop, or I'll shoot." After a brief period of hesitation, the two started to run again. Ball then fired and wounded appellant in the side.

Later in his testimony Ball was asked what appellant was doing with his hands when Ball had observed him kneeling in front of the washing machine. The witness answered, "He was turning it in a counter-clockwise motion." Subsequently, Ball testified that it would take four or five turns (with a key) to unscrew the lock on the washing machine's coin box.[7] In this regard the witness also related that on the morning following the events in question he "inserted [his] key in the lock [of the washing machine before which appellant had knelt] and it took approxi-

---

4. Appellant was originally charged with an additional count of burglary not in a dwelling. At the conclusion of the evidence at the trial, the court granted appellant's motion to dismiss the count on the ground that the structure in question was a dwelling house.

5. Ball's testimony established that the laundry room in question contained two coin-operated washing machines and two coin-operated dryers which were owned by the Imperial Vending Company. All four units could be activated by the insertion of quarters.

6. Ball further testified that appellant knelt on one knee, placed the key in the lock, started turning it counter-clockwise.

   *   *   *   *   *

   " * * * As he was unscrewing the lock, he kept glancing back over his shoulder looking at the door * * * over his right shoulder.

   On cross-examination Ball admitted that he did not see a key or an instrument in appellant's hand. He testified that he assumed it was a key that appellant had in his hand at the time in question.

7. The witnesses further testified that the number of key turns varied with the length of the bolt which held the coin box lock in place.

mately, well, I just started to turn it and the door fell off."

We are of the opinion that Ball's testimony was, in itself, sufficient to permit the issue of appellant's larcenous intent to be submitted to the jury, and further furnished an adequate evidentiary basis for the jury's guilty verdict.[8] In short, we hold that fair-minded men in the exercise of reasonable judgment could have differed on the question of whether appellant had the intent to commit the crime of larceny and whether appellant had committed an unequivocal overt act towards its completion.[9]

As a second facet of his argument concerning the lower court's denial of his motion for judgment of acquittal, appellant seems to take the position that error was committed due to the prosecution's failure to prove that any coins were contained in the machine which appellant allegedly attempted to open.[10] We are of

the opinion that the portions of John Ball's testimony, which we have previously mentioned, furnish a sufficient evidentiary basis for the jury's drawing the reasonable inference and conclusion that there was money in the coin box of the washing machine at the time in question.[11] Alternatively, we are of the view that the lower court's ruling can be sustained even though the machine's coin box was in fact empty. In short, we adopt the "empty pocket doctrine."

In People v. Rollino [12] the court stated in part:

Examples of cases in which *attempt* convictions have been sustained on the theory that all that prevented the consummation of the completed crime was a 'factual impossibility' [as distinguished from a "legal impossibility"] are;

\*     \*     \*     \*     \*     \*

(b) An attempt to steal from an empty receptacle (Clark v. State, 86 Tenn. 511,

8. Ball's testimony was corroborated by other evidence which the prosecution adduced.

Appellant's defense was that he accompanied an ailing friend to the building so that his friend could sell his automobile to a tenant who resided in Building 35 of the Hollywood Vista Apartments. Appellant's version was that both he and his friend were unfamiliar with the building and that just after having entered through the basement, appellant's friend asked appellant to tie his shoe lace for him. As appellant was kneeling in the act of tieing his infirm friend's shoe lace, he was fired upon and wounded.

9. In Lemke v. United States, 211 F.2d 73, 75–76 (9th Cir.), cert. denied, 347 U.S. 1013, 74 S.Ct. 866, 98 L.Ed. 1136 (1954) (footnote omitted), it was said:

Of course it is elementary that mere preparation to commit a crime, not followed by an overt act done toward its commission, does not constitute an attempt. \* \* \* There are borderline cases where it is sometimes difficult to determine whether preparation to commit a crime has come near enough to the accomplishment of the act so that an attempt has been committed. But this is no such borderline case. Lemke's overt act was a long move in the

direction of accomplishing the completed crime. Proof of his guilt was sufficient.

See also Spies v. United States, 317 U.S. 492, 63 S.Ct. 364, 87 L.Ed. 418 (1943); United States v. Coplon, 185 F. 2d 629 (2d Cir. 1950), cert. denied, 342 U.S. 920, 72 S.Ct. 362, 96 L.Ed. 688 (1952); Wooldridge v. United States, 237 F. 775 (9th Cir. 1916); and People v. Bowlby, 135 Cal.App.2d 519, 287 P.2d 547, 53 A.L.R.2d 1147 (1955), regarding the necessity of a direct, unequivocal act towards consummation of the crime as an element of the crime of attempt.

10. Appellant concedes that:

The majority of decisions have long been clear in regard to the so called 'empty pocket doctrine.' That is the wrongful act of reaching into another's pocket with intent to steal whatever may be found is an attempt to commit larceny, even if the pocket is empty. Perkins on Criminal Law, Section 492.

11. We have reference to Ball's testimony that the laundry room, which contained two washers and two dryers, was "busy for the next two and half hours or so" as the result of family use.

12. 37 Misc.2d 14, 233 N.Y.S.2d 580, 583 (Sup.Ct.1962).

8 S.W. 145) or an empty house. (State v. Utley, 82 N.C. 556).[13]

We are of the opinion that a factual impossibility which was not apparent to the actor at the time should not, as a matter of policy, insulate him from conviction for attempting the commission of the offense. We, therefore, hold that the trial court did not err in denying appellant's motion for judgment of acquittal.

Appellant's final point in this appeal is that the trial court committed error by virtue of its refusal to permit appellant to offer "demonstrative evidence of the re-enactment of the shooting." After reviewing the entire record, we assume appellant has reference here to events which transpired during his own counsel's cross-examination of the prosecution's chief witness, John Ball.[14] Until objected to by counsel for the prosecution, appellant's counsel had the witness Ball fire an empty weapon three times while he ran in various directions. We hold that the trial court did not err in sustaining the prosecution's objections to the continuation of appellant's re-enactment of the shooting.

In regard to experiments and court room demonstrations, Professor McCormick states that:

> The general requirement of similarity of conditions applied to experimental evidence generally, applies with equal force to experiments in court. Manifestly, the trial judge can best determine whether the confusion and delay incident to the court-room experiment outweigh its value, and his wide discretionary power to permit or exclude the experiment is constantly emphasized.[15]

We find no abuse of discretion here.[16]

The judgment and commitment entered below is affirmed.

13. In People v. Siu, 126 Cal.App.2d 41, 271 P.2d 575, 576 (1954), the court said:
   [I]f a person formulates the intent and then proceeds to do something more which in the usual course of natural events will result in the commission of a crime, the attempt to commit that crime is complete. And even though the intended crime could not have been completed, due to some extrinsic fact unknown to the person who intended it, still he is guilty of attempt.
   See also State v. Damms, 9 Wis.2d 183, 100 N.W.2d 592, 79 A.L.R.2d 1402 (1960).

14. Nowhere in appellant's brief are we informed as to the point in the trial at which appellant made such an offer. See Supreme Ct.R. 11(a) (6).

15. C. McCormick, Evidence § 182, at 390 (1954) (footnotes omitted); Navajo Freight Lines, Inc. v. Mahaffey, 174 F. 2d 305, 310 (10th Cir. 1949); Harper v. Blasi, 112 Colo. 518, 151 P.2d 760, 761 (1944).

16. Appellant relies upon People v. Herk, 179 Misc. 450, 39 N.Y.S.2d 246, 248–249 (Sup.Ct.1942). We believe Herk is distinguishable from the case at bar because there the court held that the evidence in question was "real proof."