STATE OF NEBRASKA, APPELLEE, V. ELIJAH JONES, APPELLANT.

350 N.W.2d 11

Filed May 25, 1984. No. 83-497.

Thomas M. Kenney, Douglas County Public Defender, and Stanley A. Krieger, for appellant.

Paul L. Douglas, Attorney General, and Lynne R. Fritz, for appellee.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

KRIVOSHA, C.J.

The appellant, Elijah Jones, appeals from a judgment entered by the district court for Douglas County, Nebraska, which, following a trial to the jury, found Jones guilty of first degree murder and sentenced him to a term of life imprisonment in the Nebraska Penal and Correctional Complex. Jones appeals on two narrow grounds: (1) He maintains that the evidence was insufficient to find him guilty of premeditated first degree murder; and (2) He maintains that the introduction of two gruesome photographs constituted prejudicial error. We have reviewed the record and believe the assignments are without merit, and for this reason both the conviction and sentence are affirmed.

The record discloses that at approximately 11 p.m. on the evening of November 19, 1979, Jones shot and killed Elijah Kelly. There is no dispute in the evidence that Jones killed Kelly by firing a number of bullets from a .38-caliber handgun into Kelly. There were several eyewitnesses to the shooting. The only question is whether there was sufficient evidence from which the jury could determine, beyond a reasonable doubt, that the killing was done with premeditation, so as to permit the jury to find Jones guilty of first degree murder rather than of second degree murder or manslaughter. While there was indeed some conflict in the evidence, there was testimony from a number of eyewitnesses to the effect that the victim was playing cards when

Jones entered a room of a club located in Omaha, Nebraska, and approached the card table. Jones requested an apology from Kelly with respect to an altercation which had occurred some 3 days earlier when Kelly fired two shots through Jones' apartment door. Kelly responded that he, too, wanted an apology from Jones, and as he started to pull his money together and get up from the card table, Jones pulled the .38-caliber handgun from his jacket pocket and fired several shots. At the time of the shooting Kelly was clothed in only a shirt and blue jeans; therefore, one would have been able to detect any weapon on Kelly. Later investigation disclosed that Kelly had no weapon on him. Once Kelly was on the floor, apparently trying to crawl away from the table, Jones followed him around the table, leaned over him, and continued to fire the remaining bullets into Kelly. When officers at the scene approached Jones, he said, "I did it. I had to do it." He was therefore arrested and taken to police headquarters. For reasons which are silent in the record and which are beyond this court's comprehension, Jones was not charged with the crime at that time and was released.

In the early fall of 1982 while talking to an undercover agent who was investigating the sale of illegal weapons, Jones bragged that "he had to dust a dude several years prior to that on his birthday." Apparently, he was attempting to impress the undercover agent that he was a man with whom the undercover agent wanted to do business. A later conversation between the officer and Jones with respect to the details of the killing was video recorded, and Jones, still believing he was impressing a drug dealer, freely and voluntarily told the undercover agent all about what had transpired in November of 1979. At the trial Jones testified on his own behalf and admitted that he had fired the weapon but maintained that he believed that Kelly had a gun and, therefore, he shot him in self-defense.

As we have indicated, no question exists as to whether Jones fired the gun that killed Kelly, and the only possible question is whether the shooting was done with premeditation. In *State v. Bautista*, 193 Neb. 476, 227 N.W.2d 835 (1975), we noted that it was a jury question as to whether the elements of first degree murder existed in a particular case. And with regard to the conflict concerning the evidence, in *State v. Partee*, 199 Neb. 305, 313, 258 N.W.2d 634, 639 (1977), we said:

> In determining the sufficiency of evidence to sustain a conviction, however, it is not the province of this court to resolve conflicts in the evidence, pass on the credibility of witnesses, determine the plausibility of explanations, or weigh the evidence. Such matters are for the jury. State v. Spidell, 194 Neb. 494, 233 N.W.2d 900 (1975); State v. Brown, 195 Neb. 321, 237 N.W.2d 861 (1976). The verdict of a jury must be sustained, if, taking the view most favorable to the State, there is sufficient evidence to support it. State v. Johnsen, 197 Neb. 216, 247 N.W.2d 638 (1976).

See, also, *State v. Miner*, 216 Neb. 309, 343 N.W.2d 899 (1984). Whether or not the elements of deliberation and premeditation existed in the instant case, in light of the evidence, was for the jury to determine. Jones makes some claim that he thought he was acting in self-defense and did not have sufficient time to think about the shooting, therefore rebutting any question of premeditation. No particular length of time for premeditation is required, however, provided that the intent to kill is formed before the act is committed and not merely simultaneously with the act which caused the death. See, *Savary v. State*, 62 Neb. 166, 87 N.W. 34 (1901); *State v. Nokes*, 192 Neb. 844, 224 N.W.2d 776 (1975).

In the instant case there was evidence which, if the jury had believed, would have proved that Jones obtained his handgun prior to the shooting and came

to the club at approximately 6 p.m. that evening looking for Kelly. He returned again later that evening, armed and still looking for Kelly. It is difficult to see how one is acting in self-defense when he goes looking for his supposed assailant.

When Jones returned to the club at approximately 11:15 p.m. the same evening, five men were in the backroom playing cards. The evidence further disclosed that Kelly did not have a gun, nor could a reasonable man believe that one was hidden either in Kelly's shirt or jeans. And, finally, after Kelly was first shot and fell to the ground, he attempted to crawl away. Yet, Jones pursued him, leaned over him, and continued to fire his gun into Kelly. The evidence shows that some of the bullets entered Kelly from his front, while others entered his body from his back while he was lying on the floor. It is difficult to envision what Jones was defending himself against when he shot Kelly in the back while Kelly was lying on the floor, attempting to crawl away. The jury could have determined, even absent Jones' own confession as to what he intended to do, that there was premeditation and deliberation involved in this killing.

In *State v. Lynch*, 215 Neb. 528, 534, 340 N.W.2d 128, 132 (1983), we said:

The location, nature, and number of wounds inflicted are circumstances from which the jury could and did draw the inference that Lynch, with ''deliberate and premeditated malice,'' killed his victim. [Citations omitted.] The wounds were the windows of the mind through which the jury could see Lynch's subjectivity when he committed the act.

Based upon the testimony of eyewitnesses, the physical evidence at the scene, and the expert testimony by the pathologist, the jury could have concluded beyond a reasonable doubt that Jones killed Kelly purposely and with deliberate and premeditated malice, notwithstanding the conflict in the evidence. See *State v.*

*Beers*, 201 Neb. 714, 271 N.W.2d 842 (1978). The jury's finding was fully supported by the evidence.

Turning, then, to Jones' second assignment of error, that two photographs introduced in evidence were so gruesome as to be prejudicial, we believe such not to be the case. In the instant case the prosecution offered photographs marked as exhibits 1 to 21, inclusive. Thirteen photographs were admitted without objection, nine of which were photographs of the victim's body. Defense counsel objected to eight photographs, and the court sustained the objection to six of them and received in evidence photographs marked exhibits 6 and 8. Exhibit 6 depicts the area of the victim's body in which one bullet entered through the back shoulder and lodged just above the left nipple. Exhibit 8 illustrates the victim's left arm and shows the entry wounds. Dr. Jones, in his direct examination, testified with respect to each gunshot wound. He testified that Kelly's death was due to multiple gunshot wounds which involved the chest, the upper abdomen, the back, the left forearm, and the left upper arm. Exhibits 6 and 8 were introduced and used by the prosecution to illustrate and prove the position of the body and the wounds, the clothes worn by the victim, and the state of mind of Jones. The photographs support the version of the incident given by the eyewitnesses who testified that Jones kept shooting after the victim was down. We have frequently held that in a homicide case in particular, photographs of the victim are admissible, even if gruesome, if proper foundation is laid and they are received for purposes of identification, to show the condition of the body, the nature and extent of the wounds, and to establish malice or intent. See, *State v. Rowe*, 210 Neb. 419, 315 N.W.2d 250 (1982); *State v. Lamb*, 213 Neb. 498, 330 N.W.2d 462 (1983); *State v. Clermont*, 204 Neb. 611, 284 N.W.2d 412 (1979); *State v. Krimmel*, 216 Neb. 825, 346 N.W.2d 396 (1984). While Jones admits that he did the

shooting, he denies that the shooting was done with premeditation and malice, and therefore the photographs were relevant with regard to establishing that issue, and certainly to support the version of the incident given by eyewitnesses who testified that Jones kept shooting after the victim was down. See *State v. Record*, 198 Neb. 530, 253 N.W.2d 847 (1977). The second assignment is likewise without merit.

We believe that the evidence was sufficient for the jury to find Jones guilty of first degree murder and that the introduction of exhibits 6 and 8 was not prejudicial. For these reasons the judgment and sentence are affirmed.

AFFIRMED.