STATE OF NEBRASKA, APPELLEE, V. JEFFREY R. BENZEL, APPELLANT.

370 N.W.2d 501

Filed July 12, 1985.   No. 84-827.

Cunningham, Blackburn, VonSeggern, Livingston & Francis, for appellant.

Robert M. Spire, Attorney General, and Lynne R. Fritz, for appellee.

Krivosha, C.J., Boslaugh, White, Hastings, Caporale, and Shanahan, JJ.

Hastings, J.

Defendant was convicted by a jury of the first degree murder of Terry Atkinson, use of a firearm to commit a felony, attempted first degree murder of Kim Christensen, and being a felon in possession of a firearm. In a separate proceeding he was found to be a habitual criminal. A three-judge panel sentenced defendant to a term of life imprisonment to be served consecutively to the other three sentences, which were 20 to 60 years, 30 to 60 years, and 10 to 60 years, consecutively. Defendant has appealed, and we affirm except as to count III.

Defendant assigns as errors: (1) The insufficiency of the evidence to support convictions for first degree murder and attempted murder, and for being a habitual criminal; (2) Erroneous rulings by the trial court regarding jury selection; (3) Failure to grant a mistrial because of prosecutorial misconduct; and (4) Errors in sentencing.

There was conflicting testimony at trial surrounding the facts of the case. However, in determining the sufficiency of the evidence to sustain a conviction, it is not the province of this court to resolve conflicts in the evidence, pass on the credibility of witnesses, determine the plausibility of explanations, or weigh the evidence. Such matters are for the trier of fact, and a verdict made by the trier of fact must be sustained if, taking the view most favorable to the State, there is sufficient evidence to support it. *State v. Sutton, ante* p. 128, 368 N.W.2d 492 (1985); *State v. Goodon,* 219 Neb. 186, 361 N.W.2d 537 (1985); *State v. Smith,* 219 Neb. 176, 361 N.W.2d 532 (1985).

The evidence reveals the defendant admitted shooting the decedent, Terry Atkinson, with a .357 Magnum on December 12, 1983. According to Lorene Golle, the defendant's girl friend, she, the defendant, and a friend had gone to the

Atkinson-Christensen house on December 9 to purchase drugs. Prior to going, Lorene informed the defendant she had already paid Kim Christensen, the decedent's girl friend, for the drugs the preceding Friday night, December 9, although she admitted in court she actually had not. En route to the house on December 12, the defendant told Lorene, "If I don't get what we came here for, someone's going to get dropped."

When Lorene and the defendant entered the house, Lorene asked to use the bathroom and borrow a brush. Kim showed her to the bathroom and asked what had happened to Lorene, as she appeared to have been beaten around the face. Kim left the bathroom as the defendant approached, wanting to talk to Lorene. The defendant entered, shut the door, and then Kim heard "a racket" in the bathroom, with Lorene shouting and some banging against the walls.

Terry came from the living room and twice told Lorene and the defendant to leave. The defendant grabbed Lorene and started pushing her toward the front door. Before pushing Lorene out, the defendant said he wanted to talk to Kim about being paid for the drugs. After Lorene left, Kim testified the defendant turned, grabbed her, and pointed a gun at her head, which prompted Terry to go to his bedroom where he kept a shotgun. The defendant followed and tried to kick the bedroom door in. When he could not, he returned to the living room, again grabbed Kim and put the gun to her head. He then told her, "Do you want to see something go on here? Do you want to see something happen, huh?" and then, "Better yet," and pointed the gun straight out in the direction of the bedroom, and said, "If your old man comes out and does what I think he's doing, he's going to be a dead man." As the decedent returned from the bedroom, defendant shot him in the mouth, and the victim fell to the floor.

The defendant then stood 5 or 6 feet from Kim, with his legs spread and both hands on the gun straight out "like that," as she crouched by the living room sofa. She heard the gun click and saw it (the cylinder) go around. She heard three more clicks and saw the defendant "looking at the gun like this," and then he ran from the house.

The defendant claims that only after the decedent returned to

the living room with the shotgun leveled at him did he pull his gun and shoot the decedent in self-defense. He insists that the evidence is insufficient to establish premeditation, a necessary element of first degree murder. Neb. Rev. Stat. § 28-303 (Reissue 1979).

The question of premeditation was for the jury to determine. *State v. Jones*, 217 Neb. 435, 350 N.W.2d 11 (1984). No particular length of time for premeditation is required, provided that the intent to kill is formed before the act is committed and not simultaneously with the act that caused the death. *Jones, supra*; *State v. Nokes*, 192 Neb. 844, 224 N.W.2d 776 (1975); *Savary v. State*, 62 Neb. 166, 87 N.W. 34 (1901). The time needed for premeditation may be so short as to be instantaneous; the intent to kill may be formed at any moment before the homicide is committed. *State v. Bautista*, 193 Neb. 476, 227 N.W.2d 835 (1975); *Nokes, supra*.

Here, the defendant's words both to his girl friend and to Kim Christensen before pulling the trigger were sufficient evidence to establish premeditation.

Defendant's claim of self-defense is insufficient to destroy the evidence of premeditation, as it is clear the jury could find defendant had several opportunities to leave the house and avoid any confrontation with the decedent.

With respect to the sufficiency of the evidence to convict of attempted murder, the conviction must be sustained if the defendant's guilt is established beyond a reasonable doubt from all the evidence in the case, including such reasonable inferences as seem justified in the light of the trier of facts' own experience. *State v. Buchanan*, 210 Neb. 20, 312 N.W.2d 684 (1981).

Criminal attempt is defined in part as intentionally engaging in conduct which, under the circumstances as the actor believes them to be, constitutes a substantial step in a course of conduct intended to culminate in his commission of the crime. See Neb. Rev. Stat. § 28-201(1)(b) (Reissue 1979).

Here, the evidence is sufficient to establish the requisite "substantial step." Kim Christensen testified the defendant grabbed her and put a gun to her head. He then changed his mind momentarily, directed the gun at the decedent, and shot

him. The defendant then did not leave the premises but chose to remain, stood in a firing stance, leveled the gun "like this," and Kim heard it click once and then three times and saw the cylinder advance. Her version of the story was corroborated by a neighbor who let her into his house moments later. Kim ran through the snow to the house, clad only in pajamas and with bare feet. In an anxious and frightened voice she recounted the events of the evening and told the neighbor the defendant wanted to kill her.

While Kim did not see the defendant pull the trigger, except for the first time, the circumstantial evidence, when taken as a whole, is sufficient to prove guilt of attempted murder beyond a reasonable doubt. See, *State v. Evans*, 215 Neb. 433, 338 N.W.2d 788 (1983); *State v. Harris*, 218 Neb. 75, 352 N.W.2d 581 (1984).

At oral argument defendant maintained the conviction could not stand because there was no proof the gun was loaded at the time of the alleged attempt. However, a close reading of § 28-201 does not require the gun be loaded, only that the defendant *believe* the gun to be loaded.

In a similar case, *State v. Damms*, 9 Wis. 2d 183, 100 N.W.2d 592 (1960), the Wisconsin Supreme Court upheld the attempted murder conviction of a man who shot at his wife with a gun which proved to be unloaded. The court said the man's belief the gun was loaded, proven beyond a reasonable doubt, was sufficient to uphold the conviction despite the impossibility of completing the intended crime. The court reviewed the applicable case law and stated:

> Sound public policy would seem to support the majority view that impossibility not apparent to the actor should not absolve him from the offense of attempt to commit the crime he intended. An unequivocal act accompanied by intent should be sufficient to constitute a criminal attempt. In so far as the actor knows, he has done everything necessary to insure the commission of the crime intended, and he should not escape punishment because of the fortuitous circumstance that by reason of some fact unknown to him it was impossible to effectuate the intended result.

*Id.* at 190-91, 100 N.W.2d at 596; *Mullen v. The State*, 45 Ala. 43 (1871). See *State v. Mitchell*, 139 Iowa 455, 116 N.W. 808 (1908).

The court concluded, based on the wording of the attempt statute, that the defendant was guilty of attempted murder. Here, defendant's actions at the time the gun misfired were sufficient evidence that he believed the gun was loaded; the conviction should be upheld.

Furthermore, although there was no direct testimony that the gun was pointed at the victim in the attempted murder charge, she stressed that the defendant was in a firing stance with the gun pointed straight out "like this." The first victim, Atkinson, lay dead on the floor. There was no one else in the house at whom a gun could be pointed. Also, the testimony of the victim that the gun was pointed "like this" suggests a demonstration from which the jury might properly infer that it depicted a pointing at the victim. If this was not correct, it was incumbent upon the defendant to bring out on cross-examination that such was not the fact.

The defendant next challenges the evidence admitted to establish he is a habitual criminal.

At the hearing the State introduced records of two prior felony convictions for which the defendant served sentences of 1 year or more. Neb. Rev. Stat. § 29-2221 (Reissue 1979).

Defendant was first convicted for car theft in 1974 at age 16. He pleaded guilty and was sentenced to 1 year in prison. The documents admitted to establish this prior conviction included posttrial exhibit 17, authenticated copies of the information, journal entry, and order of commitment from Hall County; posttrial exhibit 18, a certified copy of the transcript of the proceedings before the district court; and posttrial exhibit 19, certified records of the Nebraska Penal and Correctional Complex.

Exhibits 17 and 18 established the defendant was represented by counsel at the time he pleaded guilty. His plea was accepted after the information charging him with the crime was read and the court advised him of (1) the penalties, (2) his right to trial by jury, (3) his right to cross-examine witnesses, and (4) the State's burden to prove guilt beyond a reasonable doubt, and a factual

basis for the crime was established. Exhibit 19 established the defendant's period of incarceration and corroborated he pleaded guilty to the theft.

The defendant objects that exhibit 18 is not properly authenticated by the clerk of the court and bears only the certification of the court reporter. However, under Neb. Rev. Stat. § 27-902(4) (Reissue 1979), no extrinsic authentication is required for admissibility of a copy of an official record certified by its authorized custodian who has complied with the rules of the Supreme Court as to certification. Rule 5 of the Revised Rules of the Supreme Court of the State of Nebraska (rev. 1983) requires that a bill of exceptions contain a certificate by the court reporter that it is a true and complete record of the proceedings. Here, such certification existed, and the objection is without merit.

Defendant next objects that the conviction for car theft did not meet the constitutional requirements to establish the plea was voluntarily entered. However, not only do the proceedings meet the requirements set out in *State v. Turner*, 186 Neb. 424, 183 N.W.2d 763 (1971), but any objections to validity, other than effective assistance of counsel or waiver thereof, must be raised by direct appeal or a separate proceeding to establish the invalidity of the proceedings, *State v. Baxter*, 218 Neb. 414, 355 N.W.2d 514 (1984). As the evidence establishes the defendant was represented by counsel, the proffered evidence is sufficient to support a finding of habitual criminal. *State v. Gonzales*, 218 Neb. 43, 352 N.W.2d 571 (1984).

The State also introduced records of a prior conviction from Adams County showing the defendant pleaded guilty to one count of robbery in January 1978, receiving a sentence of 3 to 9 years. Documents include exhibit 16, a copy of the order of commitment from Adams County; exhibit 20, certified records of the Nebraska Penal and Correctional Complex; and exhibit 32, journal entries from Adams County and an authenticated copy of the information.

The defendant objects to exhibit 16 as not duly authenticated by the clerk of the district court. However, the document was authenticated by the deputy clerk; and pursuant to Neb. Rev. Stat. § 25-2219 (Reissue 1979), any duty of a clerk of the district

court may be performed by a deputy. The objection was properly overruled.

Defendant objects to exhibit 32, which contains an apparent inconsistency. The journal entry of the arraignment on January 17, 1978, states that the defendant entered a plea of guilty to count II of the information and that count I was dismissed. The journal entry of the sentencing on January 27, 1978, states that the defendant was sentenced for one count of robbery, as count II of the information was dismissed. However, it is clear from reading all three documents together that the defendant pleaded guilty to count II and was incarcerated therefor. The discrepancy does not destroy the sufficiency of the evidence to establish the defendant was a habitual criminal.

Defendant next challenges the jury selection process and the trial court's ruling on his pretrial motion. In his motion defendant requested (1) the jury panel be sequestered during voir dire, with a maximum of six potential jurors present at any one time, (2) defendant be granted 12 peremptory challenges for count I and 6 peremptory challenges for each remaining count, and (3) on voir dire defense counsel be allowed to inquire of each prospective juror his or her view on the death penalty and whether that view would influence the juror's impartiality. The first part of the motion was denied; on the second, defense was limited to 12 peremptory challenges; and on the third part, defense counsel was granted the same privilege as the State.

The trial court did not err in denying defendant's request to sequester the jury during voir dire. The general rule is that a party, in selection of a jury, ordinarily has no right to examine a juror out of the presence of all other jurors. *State v. Kirby*, 185 Neb. 240, 175 N.W.2d 87 (1970); *State v. Fiegl*, 184 Neb. 704, 171 N.W.2d 643 (1969). The only exception, as suggested in *Kirby, supra*, is a showing that without sequestration the defendant's rights would be prejudiced. See *State v. Ell*, 196 Neb. 800, 246 N.W.2d 594 (1976).

At hearing, the only reason advanced by defense counsel for sequestration was that it would allow the jurors to remain fresh in their answers to counsel's voir dire questions. However, there is no showing on the record that the prospective jurors were "fatigued" or influenced by other jurors' responses. If

anything, they appeared open and responsive to all questions.

Neither did the court err in limiting the number of peremptory challenges for the defense to 12. *State v. Abboud*, 181 Neb. 84, 147 N.W.2d 152 (1966), held a defendant is not entitled to additional peremptory challenges because the indictment charges separate offenses in separate counts. Here, the defendant sought a total of 30 peremptory challenges on 4 counts, but the court limited him to 12 as provided for in any crime punishable by death or life imprisonment. See Neb. Rev. Stat. § 29-2005 (Cum. Supp. 1984).

The defendant next challenges his "denial" to inquire of potential jurors their views on the death penalty. Defendant invokes *Grigsby v. Mabry*, 758 F.2d 226 (8th Cir. 1985), which held the systematic exclusion for cause of all jurors who hold absolute scruples against the death penalty violates the defendant's sixth amendment right to a jury composed of a representative cross-section of the community.

The defendant's position here is difficult to understand, because the motion was not denied. Defendant, in arguing the motion, sought the same privilege of inquiry as the State was allowed. As the excerpt below demonstrates, the defense sought no greater realm of inquiry nor raised any constitutional objections to the proceedings.

> THE COURT: My vague recollection of the cases is that the only question allowed to be asked by the prosecution is the one that I just stated or paraphrased. Whether the conviction is — Whether the feeling about capital punishment is such that it would affect the juror's ability to make a fair and impartial determination of guilt, and once that question is answered, counsel are not allowed to go beyond that. That's as far as they may go.
>
> Is your understanding different?
>
> MR. FRANCIS: That's what we are asking. We are asking to be allowed —
>
> THE COURT: That the State would be — That the State would be allowed to pursue that issue further than that question and its bald answer?
>
> MR. FRANCIS: No. If that's the extent of the inquiry. I think that we, also, should be entitled to ask that same

question, however.

THE COURT: All right. I agree with you. You may ask that same question, but not others relating to the juror's beliefs about capital punishment.

MR. FRANCIS: Okay.

During questioning, defense did inquire of one juror her feelings about the death penalty, and he never objected to the State's removal for cause of another juror who felt it impossible for her to follow her oath.

The question as permitted by the court is in line with the dictates of *Witherspoon v. Illinois*, 391 U.S. 510, 88 S. Ct. 1770, 20 L. Ed. 2d 776 (1968), *reh'g denied* 393 U.S. 898, 89 S. Ct. 67, 21 L. Ed. 2d 186, which allows all jurors to serve who oppose the death penalty as long as each swears to decide guilt or innocence based on the evidence and law as given to him. This proposition was reiterated in *Adams v. Texas*, 448 U.S. 38, 45, 100 S. Ct. 2521, 65 L. Ed. 2d 581 (1980): "The State may insist . . . that jurors will consider and decide the facts impartially and conscientiously apply the law as charged by the court." See, *State v. Reeves*, 216 Neb. 206, 344 N.W.2d 433 (1984); *State v. Lamb*, 213 Neb. 498, 330 N.W.2d 462 (1983). Even *Grigsby, supra*, acknowledges the validity of *Adams, supra*, and *Witherspoon, supra*, that jurors who will not take the oath or decide guilt or innocence on the evidence and law may be excluded.

The recent case of *Wainwright v. Witt*, 469 U.S. ____, 105 S. Ct. 844, 83 L. Ed. 2d 841 (1985), reaffirms the position of *Adams, supra*. In light of this case defendant's reliance on *Grigsby* is misplaced.

The defendant also challenges the trial court's refusal to remove juror Anderson for cause. During voir dire, it became clear Ms. Anderson did not want to serve on this jury. When questioned, she asserted serving would cause hardships at work; that she had known the Benzels since high school; and that she had already "kind of" made up her mind about the case from what she had read in newspapers, heard on radio, and seen on television. When asked by defense counsel, she said she would have difficulty taking the oath. However, the court denied the defense's removal for cause after she told the court

she would try to render a decision based on the evidence and law as given. She later told the court she believed in the presumption of innocence until proven guilty beyond a reasonable doubt. She was later excused on one of defense's peremptory challenges.

A juror who has indicated an inability to fairly and impartially determine guilt by refusing to subordinate his own personal views and obey the law of the state must be excused for cause. *Reeves, supra*; Neb. Rev. Stat. § 29-2006 (Reissue 1979). Here, the juror was willing to subordinate her personal views, and therefore removal for cause was committed to the trial court's discretion and subject to reversal only when clearly wrong. *State v. Ellis*, 208 Neb. 379, 303 N.W.2d 741 (1981). As the action of the trial court was not clearly erroneous, this assignment is without merit.

The defendant next claims the district court erred in failing to grant a mistrial based on statements made by the prosecution during closing arguments.

During closing argument, the prosecuting attorney attempted to sum up the evidence presented by Kim Christensen. He said the defendant pointed a gun at Ms. Christensen and pulled the trigger. He then remarked, "I think she's lucky to be alive to tell us that story here today. I think if the defendant would have had his way, she would be dead like Mr. Atkinson is."

Defendant claims not only are the remarks about pointing the gun and pulling the trigger untrue but the prosecutor, by injecting his personal beliefs, inflamed the passions of the jury.

Before discussing the prejudicial aspect of the claim, the court must note the defendant did not object to the remarks at the time they were made nor at any time prior to the jury's being sequestered for deliberation.

The failure to make a timely objection is equivalent to failing to make an objection at all and waives any right to complain. See *State v. Boss*, 195 Neb. 467, 238 N.W.2d 639 (1976).

Further, if the court does consider the objection, the remarks were not unduly prejudicial. Whether prosecutorial misconduct is prejudicial depends largely on the facts of each case. *State v. Reeves*, 216 Neb. 206, 344 N.W.2d 433 (1984). The impact of

any comment made at trial depends on the atmosphere at trial. The trial judge is in a better position to measure the impact a comment has on a jury, and his decision will not be overturned unless clearly erroneous. *Reeves, supra.*

The general rule is that remarks of the prosecutor in final argument which do not mislead or unduly influence the jury do not rise to a level sufficient to require granting a mistrial. *Reeves, supra*; *Argabright v. State*, 62 Neb. 402, 87 N.W. 146 (1901).

Here, the prosecutor prefaced his remarks by telling the jury what he said was not evidence and that they need not accept his comments if not supported by the evidence. Further, it is not prejudicial for the prosecutor to make remarks based on deductions and inferences drawn from the evidence. *State v. Brooks*, 189 Neb. 592, 204 N.W.2d 86 (1973). See, *State v. Wounded Arrow*, 207 Neb. 544, 300 N.W.2d 19 (1980); *State v. Dandridge*, 209 Neb. 885, 312 N.W.2d 286 (1981). The prosecutor's remarks fall within this exception.

The last assignments concern sentencing and sentencing procedures.

The defendant claims the district court failed to set the date for hearing on the sentence to be imposed on the first degree murder count within 7 days of the guilty verdict, as mandated by Neb. Rev. Stat. § 29-2520 (Reissue 1979).

The defendant was convicted by a jury on July 12, 1984. An order designating a three-judge panel to determine the sentence for first degree murder was entered by the Chief Justice on July 20, 1984. On July 23, 1984, the district court's progression order set September 28, 1984, for a sentencing hearing before the three-judge panel. On August 20, 1984, the defense raised the issue as one of his posttrial motions. At the hearing on those motions on September 7, 1984, the court admitted that the 7-day restriction was not complied with. However, the court denied defendant's motion for a new trial, as it failed to see what prejudice befell the defendant because of the delay. The district court was correct in its assessment.

In determining whether the rights of a defendant have been prejudiced such that a reversal is required, the claim of prejudice must be evaluated in the context of the entire record.

*State v. Birge*, 215 Neb. 761, 340 N.W.2d 434 (1983).

Here, the defendant was granted a continuance on his posttrial motions until September 7, 1984. The continuance was premised on his request to obtain new counsel. However, the defendant never succeeded, and proceeded with his trial counsel. As a result of the continuance, the sentencing on count I was not handed down until October 29, 1984. The 4-day delay in setting the progression order is insignificant compared to the month's delay in sentencing occasioned by defendant's request for time to obtain new counsel.

Further, the defendant was sentenced to life in prison rather than the more serious penalty of death. As such, it is unclear how a 4-day delay in setting the hearing date amounted to any significant prejudice to the defendant. There is no ground for reversal where the error does not result in some demonstrative prejudice. *State v. Masters*, 216 Neb. 304, 343 N.W.2d 744 (1984).

Finally, defendant challenges the sentences imposed on counts II, III, and IV as excessive because the district court ordered them to be served consecutively.

The rule is that where the punishment of an offense created by statute is left to the discretion of the court to be exercised within certain prescribed limits, a sentence imposed within such limits will not be disturbed on appeal unless there appears to be an abuse of discretion. *State v. Johnson*, 209 Neb. 308, 307 N.W.2d 525 (1981). Further, it is within the discretion of the district court to direct that sentences imposed for separate crimes be served consecutively. *State v. Tweedy*, 196 Neb. 246, 242 N.W.2d 626 (1976).

The crimes committed here were serious. The defendant killed one person and attempted to kill another. The record reveals a history of criminal activity and two prior felony convictions. As the sentences imposed were within statutory limits, they should stand except for that imposed for count III, attempted first degree murder. The sentence of from 30 to 60 years is statutorily excessive.

Neb. Rev. Stat. § 83-1,105(1) (Reissue 1981) provides that in imposing an indeterminate sentence on a defendant, "the minimum limit fixed by the court shall not be less than the

minimum provided by law nor more than one-third of the maximum term . . . ."

As a habitual criminal, defendant's count III conviction was punishable by a minimum of 10, maximum of 60, years in prison. See § 29-2221. The minimum to be imposed can be no greater than 20 years. Therefore, the cause must be remanded to the district court for resentencing on count III, attempted murder.

With that exception, the judgment of the trial court was correct and is affirmed.

JUDGMENTS ON COUNTS I, II, AND IV AFFIRMED.
SENTENCE ON COUNT III VACATED AND THE CAUSE
REMANDED FOR RESENTENCING ON COUNT III.

GRANT, J., not participating.